Andrew F. Sears, #7-4557
MURANE & BOSTWICK, LLC
201 N. Wolcott
Casper, WY 82601
Telephone: (307) 234-9345
Facsimile: (307) 237-5110
afs@murane.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2015 DEC 29  PM 1 51

STEPHAN HARRIS, CLERK
CASPER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

WESTERN VISTA FEDERAL CREDIT )
UNION, )
 )
      Plaintiff, )
 )
vs. )
 )
WESTCOR LAND TITLE INSURANCE )
COMPANY, a California Corporation, )
 )
      Defendant. )

Civil No. 15CV230F

## COMPLAINT

    Plaintiff, Western Vista Federal Credit Union, by and through its attorneys, Murane &

Bostwick, LLC, for its Complaint against Defendant Westcor Land Title Insurance Company, a

California Corporation, states and alleges as follows:

### Jurisdiction and Parties

    1)    Plaintiff Western Vista Federal Credit Union (hereafter referred to as WVFCU) is

a Federal Credit Union operating exclusively within the State of Wyoming, with its principle

Receipt # CAS1584
Summons: 1 issued
_____ not issued

place of business located in Cheyenne, Wyoming.  Accordingly, it is deemed a citizen of the State of Wyoming.

2)      Defendant Westcor Land Title Insurance Company (hereafter referred to as "Westcor") is a California Corporation that underwrites title insurance products and maintains its principle place of business in Winter Park, Florida.

3)      The amount in controversy exceeds seventy-five thousand dollars ($75,000).

4)      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

5)      Venue with this Court is proper pursuant to 28 U.S.C. 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims herein occurred in Wyoming, and the property that is subject of this action is located in Natrona County, Wyoming,

### Facts

6)      On October 12, 2011, Richard J. Schlesinger borrowed two-hundred eighty-two thousand four hundred dollars ($282,400.00) from WVFCU, as evidenced by execution of a promissory note.

7)      On October 12, 2011, Richard J. Schlesinger executed a "Mortgage" naming the property commonly known as 3623 Garden Creek Road, Casper, WY 82601 (hereafter referred to as the "Property") as security for the loan described in Paragraph 6, and naming WVFCU as the mortgagee.  The "Mortgage" was subsequently filed with the Natrona County Clerk in Natrona County, WY on October 18, 2011.

8)      On October 18, 2011, Westcor issued title insurance policy no. LP-13-WY1002-1207 naming WVFCU as the insured, and naming the "Mortgage" described in Paragraph 7 as the "Insured Mortgage."  (The Policy described in this Paragraph is hereafter referred to as the "Title Insurance Policy" or the "Policy.")

9)     The Title Insurance Policy provides coverage, in part, for: "Any encroachment, encumbrance, violation, variation or adverse circumstances affecting the Title that would be disclosed by an accurate and complete land survey of the Land." "Encroachment" was further defined by the Policy to include "encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land."

10)    The Title Insurance Policy also provides coverage, in part, for unmarketable title and for the right of access to and from the Property.

11)    On November 22, 2013, Richard J. Schlesinger passed away.  His will was admitted to probate in the Seventh Judicial District of Natrona County, WY on November 14, 2014.

12)    WVFCU gave the Estate of Richard J. Schlesinger (hereafter referred to as "the Estate") consent to sell the property.  Subsequently, a "Consent to the Sale of the Real Property Subject to Mortgage" was executed by a representative of WVFCU and the Estate, and filed with the Seventh Judicial District of Natrona County, WY on February 26, 2014. The Seventh Judicial District of Natrona County, WY entered an "Order Authorizing the Executor or Personal Representative to Sell Real and Personal Property" on March 20, 2014.

13)    Thereafter the Estate marketed the property, and numerous offers were received from prospective purchasers.

14)    On December 31, 2014, the Estate entered into a contract to buy and sell the Property with Stan and Suzie Parsons for an agreed upon purchase price of three hundred thirty-five thousand dollars ($335,000.00).

15)   During the executory period, the Parsons ordered a survey of the Property that revealed numerous encroachments by existing improvements on the Property onto adjacent land owned by Natrona County, WY.  Improvements that encroach upon County land include: a portion of a detached garage, a deck, a footbridge, a fence, and a parking area.

16)   In addition, the road leading to the Property is located upon County land, making ingress and egress problematic.

17)   Upon learning of the survey results, the Parsons withdrew their offer to purchase the property.

18)   On March 16, 2015, the Parsons made another offer to purchase the property "as-is" for one hundred forty thousand dollars ($140,000.00).

19)   On March 19, 2015, Natrona County Attorney William P. Knight Jr. wrote a letter to Larry Forsberg, the Estate's real estate agent, demanding that the encroachments be removed immediately.   The letter further stated that Natrona County might file a lawsuit if the encroachments were not removed.

20)   On March 24, 2015, WVFCU delivered a "Notice of Claim" to Westcor describing the facts outlined in the Paragraphs 6-19 above, and demanding indemnity due under the Policy.

21)   On March 26, 2015, Tiffany Riggs, on behalf of Westcor, informed WVFCU by letter that it had received the "Notice of Claim" and had begun its investigation of the claim.

22)   On April 13, 2015, Tiffany Riggs, on behalf of Westcor, requested additional information from WVFCU, including a copy of the loan origination file, any appraisals in WVFCU's possession, and any information WVFCU had regarding when the encroachments were constructed.  WVFCU promptly provided the information it had available at the time.

23)     WVFCU continued to inform Westcor about the status of the prospective purchase by the Parsons.

24)     On May 26, 2015, WVFCU advised Westcor that the Parsons would potentially increase their "as-is" offer to purchase the Property to one hundred eighty thousand dollars ($180,000.00).   WVFCU also advised Westcor of the total amount owed on the Insured Mortgage at that time. WVFCU also expressed to Westcor that the claim had been pending for two months, and it hoped that the increased offer would prompt Westcor to pay the amount of insurance coverage so that the matter could be resolved.

25)     The Estate was unable to enter into an agreement with the Parsons to sell the property "as-is" unless WVFCU would commit to releasing its lien created by the Insured Mortgage.  WVFCU, in turn, could not commit to releasing the lien created by the Insured Mortgage without the advice of Westcor.

26)     Westcor failed to reasonably communicate with WVFCU regarding the Parsons' "as-is" offer to purchase the Property.  On May 28, 2015, WVFCU was informed that the Parsons had become frustrated and withdrawn their offer to purchase the Property.  Westcor was promptly notified of the development.

27)     On June 9, 2015, well over one week after the Parsons withdrew their offer, Westcor advised WVFCU that it was still evaluating the measure of damages under the Policy.

28)     In a letter dated July 1, 2015, attorney Michael Lansing notified WVFCU that he had been retained to represent Westcor.  The letter, which was dated over three months after WVFCU filed its notice of claim, finally acknowledged that Westcor was not denying coverage. The letter also expressed that Westcor was still investigating the measure of damages and had

ordered an appraisal on June 10, 2015, long after Westcor was advised that the Parsons had withdrawn their offer to purchase the Property.

29)     On September 25, 2015, Neal and Elizabeth Hill offered to purchase the Property from the Estate for one hundred eighty-five thousand dollars ($185,000.00).   The Hills conditioned the purchase, in part, upon the following provision: "This offer is contingent upon title company providing an approved license use or permit from county to allow buyers to use property in current condition and allow access to and from property."

30)     The Estate accepted the Hills' offer on October 7, 2015.

31)     On October 9, 2015, WVFCU demanded that, at the time of closing on the Hills' and the Estate's contract, Westcor tender a check to WVFCU for the difference between the amounts owed on the Insured Mortgage and the Hills' purchase price. .

32)     Westcor, through its attorney and agent Michael Lansing, attempted to satisfy the contingency contained in the Hills' offer, as described in Paragraph 29.   Mr. Lansing met with the Natrona County Commissioners on numerous occasions, represented the terms of the Hills' offer to the Natrona County Commissioners, arranged a meeting between all of the parties that included the Hills' real estate agent, and sent numerous communications to the parties including the Hills' real estate agent, all in an effort to secure easements to satisfy the Hills' contingency described in Paragraph 29.

33)     On November 17, 2015, the Natrona County Commissioners held a work session in which Michael Lansing, as the attorney and agent for Westcor, was one of several presenters of a plan to grant easements to the Estate in order to effectuate the Hills' purchase of the Property.

34)    On November 17, 2015, the Natrona County Commissioners informed representatives of the Estate, the Hills, WVFCU, and Westcor that it was going to grant easements to allow the encroachments on the Property to remain.

35)    Westcor knew, or should have known, that the Estate's agreement with the Hills was, as a practical matter, contingent upon WVFCU releasing the lien on the Property created by the Insured Mortgage.

36)    Westcor knew, or should have known, that WVFCU expected it, pursuant to the Policy, to tender the difference between the Hills purchase amount and the amount owed on the Insured Mortgage, before it would release the lien created by the Insured Mortgage.

37)    Westcor, through the statements and actions of its attorney and agent, Michael Lansing, led the Estate, the Hills and WVFCU to reasonably believe that it would pay the difference between the Hills' purchase amount and the amount owed on the Insured Mortgage, so that WVFCU would in turn release the lien created by the Insured Mortgage at the time of closing on the purchase agreement between the Hills and the Estate.

38)    In December, 2015, Natrona County did, in fact, grant non-exclusive easements so that the structures and improvements on the Property that encroached upon County property could remain in place.

39)    After the easements were granted, closing on the purchase agreement between the Hills and the Estate was tentatively set for December 18, 2015.

40)    WVFCU informed Westcor of the tentative closing date, and that the total amount owed on the Insured Mortgage as of December 18, 2015 would be $275,504.48.   WVFCU demanded that Westcor pay the difference between the Hill's purchase amount and the amount owed on the Insured Mortgage as of the date of closing, which totaled $90,130.45.

41)     On December 16, 2015, two days before the tentative closing, Westcor informed WVFCU that it would not pay the difference between the Hills' purchase price and the amount owed on the Insured Mortgage.   Westcor further advised WVFCU that it could proceed with closing, and Westcor would order another appraisal in yet more efforts to investigate the measure of damages owed under the Policy.

## Count I – Breach of Contract

42)     Plaintiff re-alleges all other allegations made in this Complaint as if fully set forth herein.

43)     WVFCU is an insured by virtue of a Title Insurance Policy issued by Westcor Land Title Insurance Company, Policy No. LP-13-WY1002-1207.

44)     WVFCU's mortgage on the Property, known commonly as 3623 Garden Creek Road, Casper, WY 82601, is insured by virtue of Policy No. LP-13-WY1002-1207.

45)     WVFCU paid a premium as consideration for the coverages provided by the Policy.

46)     The Policy provides coverage, in part, for encroachments, unmarketable title, and access to and from the land.

47)     The Policy expressly states: "This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy."

48)     The Policy expressly states, in relevant part: "The extent of liability of the Company for loss or damage under the policy shall not exceed the least of (i) the Amount of Insurance, (ii) the Indebtedness, (iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, …"

49)     Westcor has breached the terms of the Policy by failing to fully and timely indemnify WVFCU for actual monetary loss or damage it has suffered by reasons of encroachments and an unmarketable title relating to the land subject to the Insured Mortgage.

50)     As a result of Westcor's breach, WVFCU has sustained damages in an amount to be proven at trial.

### Count II– Breach of Duty of Good Faith and Fair Dealing

51)     Plaintiff re-alleges all other allegations made in this Complaint as if fully set forth herein.

52)     Defendant Westcor, as insurer, owed and continues to owe Plaintiff WVFCU, as its insured, a duty of good faith and fair dealing.

53)     Defendant Westcor violated its duty of good faith and fair dealing by unreasonably delaying payment of Plaintiff WVFCU's claim.

54)     Defendant Westcor further and independently violated the duty of good faith and fair dealing by denying benefits due to Plaintiff WVFCU by virtue of the Policy without a reasonable basis for doing so, and with knowledge or reckless disregard of the lack of a reasonable basis for denying benefits owed to Plaintiff WVFCU by virtue of the Policy.

55)     Defendant Westcor further and independently violated the duty of good faith and fair dealing owed to Plaintiff WVFCU by the manner in which it investigated and handled Plaintiff WVFCU's claim, including but not to the following acts or omissions:

a.      Failing to investigate the amount of damages owed under the policy in a timely and reasonable manner;

b.      Failing to communicate with WVFCU during the pendency of an "as-is" offer to purchase the Property to which the Insured Mortgage applies;

c.      Failing to timely hire an attorney or other agent to investigate the claim, including but not limited to failing to timely investigate the claim during the pendency of an "as-is" offer to purchase the Property to which the Insured Mortgage applies;

d.      Ordering an appraisal for the Property to which the Insured Mortgage applies only after prospective purchasers of the Property withdrew their "as-is" offer to purchase the Property;

e.      Acquiescing to a purchase of the Property for $185,000.00, contingent upon Defendant Westcor securing licenses or permits for the encroachments on the Property to which the Insured Mortgage applies, by taking substantial actions through its attorney and agent, Michael Lansing, to fulfill that contingency, and then denying the purchase as a proper basis for measuring the amount of indemnity due under the Policy;

f.      Causing the Estate, the Hills and/or the Plaintiff WVFCU to reasonably believe it would indemnify WVFCU for its loss caused by the purchase agreement between the Estate and the Hills, through the statements and actions of its attorney and agent, Michael Lansing, and denying to do the same days before closing on the agreement;

g.      Using the Hills' offer to purchase the property as a means to mitigate its own damages and protect its own interests, and then denying to indemnify Plaintiff WVFCU for its loss caused by the Hills' and the Estate's agreement days before closing;

h.      Failing to be honest and up-front with its insured, WVFCU, about its intentions - both generally and specifically with regard to its efforts to secure easements for the encroachments under the auspices of the Hills' and the Estate's agreement to buy and sell the Property, and then refusing to indemnify WVFCU for its loss caused by the Hills' and the Estate's agreement days before closing.

56)     Defendant Westcor's violation of their duty of good faith and fair dealing proximately caused damage to Plaintiff WVFCU, in an amount to be determined at trial.

57)     The manner in which Defendant Westcor handled and investigated Plaintiff WVFCU's claim under the Policy showed special ill-will and wanton disregard for the duty of good faith and fair dealing it owed to Western Vista as its insured, and constitutes gross or outrageous misconduct warranting punitive damages.

## Count III – Attorney's Fees and Interest

58)     Plaintiff re-alleges all other allegations made in this Complaint as if fully set forth herein.

59)     Defendant Westcor has unreasonably and without cause refused to pay the full amount of the Plaintiff's claims which are covered by the Policy.

60)     Defendant Westcor's actions constitute breach of its duty of good faith and fair dealing owed to its insured, WVFCU, as more particularly described above.

61)     As a result, Plaintiff is entitled to reasonable attorney's fees and interest at ten percent (10%) per year pursuant to Wyoming Statute Section 26-15-124(c)

## Prayer for Relief

Wherefore, Plaintiff prays that this Court enter judgment in its favor and against the Defendant for breach of contract, breach of the covenant of good faith and fair dealing,

compensatory damages, consequential damages, attorney's fees, costs, interest, and punitive damages in an amount to be determined at trial.

DATED this 29th day of December, 2015.

Andrew F. Sears, #7-4557
Murane & Bostwick, LLC
Attorney for Plaintiff
201 North Wolcott Street
Casper, Wyoming 82601
Telephone: (307) 234-9345
Facsimile: (307) 237-5110
afs@murane.com
*Attorney for Plaintiff*